UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

_____

IN RE YASMIN AND YAZ (DROSPIRENONE) )     3:09-md-02100-DRH-PMF
MARKETING, SALES PRACTICES AND )
PRODUCTS LIABILITY LITIGATION )     MDL No. 2100
_____ )

**This Document Relates to:**
_____

**MARQUISA JANKINS,**

**Plaintiff,**                                  Case No. 3:10-cv-20095-DRH-PMF

v.

**BAYER CORPORATION, et al.**

**Defendants**
_____

**ORDER**

**HERNDON, Chief Judge:**

                       **I.    INTRODUCTION**

         Plaintiff brought this action in the California Superior Court, Riverside County for damages related to a myocardial infarction allegedly caused by the drug marketed as Yaz (3:10-cv-20095 Doc. 1 ¶ 30). The Defendants named in Plaintiff's complaint include, Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories Inc., Berlex Inc., Bayer Schering Pharma AG, Bayer AG (collectively, "the Bayer Defendants"), and McKesson Corporation. Both Plaintiff and McKesson are citizens of California. (3:10-cv-20095 Doc. 1 ¶¶ 2, 22). No Bayer

Defendant is a citizen of California. (3:10-cv-20095 Doc. 1 ¶¶ 7, 9, 11, 13, 15, 16, 18, 20).

The action was removed on diversity grounds to the Central District of California on November 4, 2009 (3:10-cv-20095 Doc. 1). Thereafter, the Bayer Defendants filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice identifying this action as a potential "tag-along" action to these consolidated proceedings. (3:10-cv-20095 Doc. 13 p. 1). On February 5, 2010 the JPML issued an order transferring the action to the Southern District of Illinois for inclusion in this multidistrict litigation. (3:10-cv-20095 Doc. 36).

Now before the Court, is Plaintiff's motion to remand to state court (3:10-cv-20095 Doc. 45). Plaintiff contends that diversity jurisdiction does not exist because both Plaintiff and McKesson are California citizens. *Id.* at 2. The Bayer Defendants have responded in opposition, arguing that McKesson's citizenship should be disregarded for diversity purposes because McKesson was fraudulently joined. (3:10-cv-20095 Doc. 49).

The gravamen of the Complaint is that the Bayer Defendants made false representations and concealed material facts concerning the safety and efficacy of YAZ/Yasmin from Plaintiff, the public, and the medical community. (3:10-cv-20095 Doc. 1 ¶¶ 31, 60-61, 64, 66-70, 88-89, 93, 100-101, 103, 108, 112-114, 118-120, 126, 135, 146. Each Count of the Complaint is directed against "Defendants" generally.

McKesson is a wholesale distributor of prescription medications that purchases YAZ/Yasmin and sells it to retail pharmacies (3:10-cv-20095 Doc. 49-1 ¶ 5). The Complaint identifies McKesson as one of the "Defendants" (3:10-cv-20095 Doc. 1 ¶ 25) and asserts that McKesson is a corporation "engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting [YAZ/Yazmin] in the State of California." *Id.* ¶ 23.

The Bayer Defendants contend that Plaintiff's remand motion should be denied because: 1) There is no reasonable possibility that McKesson, a wholesale distributor of prescription medications, could be held liable under California law; and 2) even if a claim could stand against McKesson, the Complaint fails to plead sufficient facts against McKesson. (3:10-cv-20095 Doc. 49, p. 2). The parties also raise arguments regarding the procedural propriety of the removal. (3:10-cv-20095 Doc. 45 p. 14; 3:10-cv-20095 Doc. 49 p. 15). For the reasons stated herein the Motion to Remand (3:10-cv-20095 Doc. 45) is **DENIED**.

## II.   DISCUSSION

**A.   Legal Standard**

    **1.   Controlling Law**

In the instant case, in determining whether Plaintiff has stated a cognizable cause of action, California substantive law governs. *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010) (When a diversity case is transferred from one federal district to another, the substantive law applied is that of the jurisdiction from which the case was transferred); *International Marketing, Ltd. v. Archer-Daniels-Midland Company, Inc.*, 192 F.3d 724, 729 (7th Cir. 1999) (the transfer of a diversity case in from one federal district court to another leaves the law "unaffected"). In determining whether Plaintiff has sufficiently pled a cause of action under California law, however, federal pleading standards govern. *See Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136 (1965) (federal courts evaluate, even a removed complaint, using federal notice pleading standards because pleading standards are procedural); *Grivas v. Parmelee Transp. Co.*, 207 F.2d 334, 337 (7th Cir. 1953) (a case removed from state court to federal court becomes, "when it arrive[s] there, … subject to the same rules of procedure as if it had been originally sued in [federal] court"). Finally, when assessing the remand and removal matters at issue here, the law of the Seventh Circuit is controlling. *See McMasters v. U.S.*, 260 F.3d 814, 819-820 (7th Cir. 2001).

  **2.**  **Removal**

The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993). Defendants bear the burden to present

evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997). "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997) (citations omitted). However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c).

The statute regarding diversity jurisdiction, 28 U.S.C. § 1332, requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs.[1] Complete diversity means that "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted).

### 3. Fraudulent Joinder

---

[1] The parties do not raise any arguments with respect to the amount in controversy. Given the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established. *See e.g.*, *McCoy by Webb v. General Motors Corp.*, 226 F.Supp.2d 939, 941 ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount").

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). *See also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993) (collecting cases). "The fraudulent joinder doctrine, therefore, permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763. (citations omitted).

In the context of jurisdiction, "fraudulent" is a term of art. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). "Although false allegations of jurisdictional fact may make joinder fraudulent ... in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." *Id.* (collecting cases). To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant,'" *Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999) (citing Poulos, 959 F.2d at 73)). The defendant bears a heavy burden in this regard. *Id*. *See also Schur*, 577 F.3d at 764 (in a fraudulent joinder analysis, the "district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant"). This burden can be met by introducing uncontradicted evidence. *See Faucett v.*

*Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir.1992) (where uncontradicted affidavit of the non-diverse defendant attesting to facts showing that the plaintiff could not establish a cause of action against him under Illinois law was sufficient to establish fraudulent joinder).

**B.   ANALYSIS**

The Bayer Defendants assert that diversity jurisdiction exists because McKesson, the only non-diverse defendant named in the Complaint, was fraudulently joined.  First, the Bayer Defendants contend that there is no reasonable possibility that McKesson, a distributor of pharmaceuticals, could be held liable under California law.  Second, they contend that, even if a claim could stand against a pharmaceutical distributor, the Complaint fails to plead sufficient facts against McKesson.

**1.   Liability under California Law**

The Bayer Defendants contend that under California law pharmaceutical distributors may not be held liable in product liability cases.  This principle, the Bayer Defendants argue, "flows from settled law, in California and elsewhere, that pharmacies cannot be held liable for dispensing FDA-approved medication pursuant to a physician's prescription."  (3:10-20095 Doc. 49 p. 10). In support of their argument, the Bayer Defendants cite the following holding in *Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d 672, 680-81 (1985):  "If pharmacies were held strictly liable for the drugs they dispense, some of them, to

avoid liability, might restrict availability by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients."

The holding in *Murphy*, however, is not applicable in the instant case. *Murphy*, addresses the liability of pharmacies and pharmacists. It does not address the liability of wholesale distributors such as McKesson. To the extent the Bayer Defendants are contending that the holding in *Murphy* should be extended to include pharmaceutical distributors, it is not the role of a federal court to expand state law beyond boundaries established in state jurisprudence. See *Dausch v. Rykse*, 52 F.3d 1425, 1438 (7th Cir. 1994).

Moreover, California is a chain-of-distribution liability state. *See Taylor v. Elliott Turbomachinery Co., Inc*. 171 Cal.App.4th 564, 575-576 (1st Dist. 2009). This means a consumer injured by a defective product can sue any business entity involved in the marketing or distribution of the product—from its manufacturer, down through the distributor and wholesaler, to the retailer. *See Id; Edwards v. A.L. Lease & Co.* (1st Dist. 1996) ("In a product liability action, every supplier in the stream of commerce or chain of distribution, from manufacturer to retailer, is potentially liable."); *Bostick v. Flex Equip. Co., Inc.,* 147 Cal. App. 4th 80, 88, 54 Cal.Rptr.3d 28 (2nd Dist. 2007) (California "imposes strict liability in tort on all of the participants in the chain of distribution of a defective product.").

Because California imposes strict liability in tort on all of the

participants in the chain of distribution and because there is no established exception in California law for pharmaceutical distributors, the Bayer Defendants have failed to carry their burden of establishing that there is no reasonable possibility that Plaintiff could prevail against McKesson in state court.

### 2. Sufficiency of the Complaint

The Bayer Defendants alternatively argue that the Complaint fails to state a cause of action against McKesson because it does not allege that McKesson supplied the pills that caused Plaintiff's injury.

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.*

In addition, to maintain any of the claims asserted by Plaintiff, the complaint must allege that McKesson supplied the pills that allegedly caused Plaintiff's injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (to state a claim, a plaintiff must allege a causal connection between the injury

and the conduct of that defendant).  Absent such a connection, Plaintiff cannot establish that McKesson's acts proximately caused the alleged injuries.

In the instant case, Plaintiff merely alleges that McKesson "was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting [Yas/Yasmin] in the State of California."  (3:10-cv-20295 Doc. 1 ¶ 23).  Plaintiff does not allege that McKesson distributed the pills that were allegedly the cause of her injury.  Plaintiff's failure to plead a causal connection between McKesson and her alleged injuries is fatal to her claims against McKesson.  Accordingly, the Complaint states no claim upon which relief can be granted and therefore, McKesson has been fraudulently joined.

### 3.     Procedural Propriety of the Notice of Removal

Plaintiff also contends that the Notice of Removal is defective because it "fails to demonstrate that Defendants Bayer Schering Pharma AG and Bayer AG joined or consented to removal."  (3:10-cv-20095 Doc. 45 p. 16).  The Bayer Defendants assert that Bayer Schering Pharma AG and Bayer AG were not required to join in or consent to the removal because neither defendant was served prior to removal, or at any time thereafter.  (3:10-cv-20095 Doc. 49 pp. 15-16).

Generally, a notice of removal is facially defective if it is not joined by all defendants or fails to explain why all defendants have not consented. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 368 (7th Cir.1993). However, as the Bayer Defendants correctly argue, a defendant that is not served with state court process need not join in the notice of removal. *See* MOORE'S FED. PRAC. § 107.11[1][d] (3d ed. 2007; *P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547 (7th Cir. 1968). Accordingly, the absence of consent from Bayer Schering Pharma AG and Bayer AG in the Notice of Removal does not constitute a procedural defect. Moreover, the Bayer Defendants removed this action on November 4, 2009. Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Plaintiff is raising her argument regarding the alleged procedural defect for the first time in this Motion to Remand, filed on March 17, 2010. Thus, Plaintiff has waived any procedural defect in the Notice of Removal.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand (10-cv-20095 Doc. 45).

**IT IS SO ORDERED.**

Signed this 14th day of May, 2010.

/s/ David R Herndon

**Chief Judge
United States District Court**